UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EDWARD HART, on behalf of
himself and others similarly situated,

        Plaintiff,

vs.                                                  Case No. 8:12-cv-00470-T-27TBM

JPMORGAN CHASE BANK, N.A.,
a foreign corporation,

        Defendant.
_____/

## ORDER

**BEFORE THE COURT** is Plaintiff's Motion for Conditional Certification of FLSA Collective Action and Permitting Court-Supervised Notice to Potential Opt-In Plaintiffs (Dkt. 27). For reasons set forth below, the motion is due to be denied.

### Introduction

On May 15, 2012, Plaintiff filed an Amended Complaint (Dkt. 19) purporting to state a collective action against JPMorgan Chase Bank, N.A. ("**JPMorgan**") for violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("**FLSA**") (Count I), unjust enrichment (Count II), and declaratory relief (Count III). Plaintiff now seeks to conditionally certify a collective action under the FLSA consisting of individuals who were (a) employed as "debt collectors" by JPMorgan at any time during the last three years and (b) worked forty hours or more in a work week. In short, Plaintiff seeks conditional certification of a nationwide class of hundreds or thousands of current and former JP Morgan employees based on divergent "off the clock" violations and despite the existence of varying factual circumstances including geography, line of business, supervisors and managers,

duties, and time keeping and pay practices. Upon careful review, the Court concludes that this action is not appropriate for collective treatment. *See Cartner v. Hewitt Associates, LLC*, No. 6:09-cv-1293-Orl-31DAB, 2010 WL 1380037 (M.D. Fla. Mar. 31, 2010) (denying conditional certification of nationwide collective action consisting of call center employees); *Adair v. Wisconsin Bell*, No. 08-C-280, 2008 WL 4224360 (E.D. Wis. Sept. 11, 2008) (same).

## Background

JPMorgan currently employees approximately 2,887 overtime-eligible debt collectors at 17 different locations throughout the United States. White, ¶¶ 3-4; Brodsky, ¶ 3; Rockwell, ¶ 3.[1] JPMorgan's debt collectors are assigned to various lines of business and each line of business has different managers at each of its multiple locations. White, ¶ 5-6; Brodsky, ¶ 5; Rockwell, ¶ 5. Below each manager are multiple supervisors, each with discretion to manage attendance, timekeeping, and performance of their own team of collectors. White, ¶ 6; Brodsky, ¶ 5; Rockwell, ¶ 5.

Plaintiff worked as a debtor collector for JPMorgan in its Tampa, Florida, call center from approximately January 9, 2009, through March 5, 2011. Hart (Dkt. 27-2), ¶¶ 13-14.[2] In his declaration filed in support of conditional certification, Plaintiff describes JPMorgan's call center operations in Tampa as follows:

> There are several buildings and floors with different collection departments, including: student loans, mortgage loans, automotive

---

[1] Defendant's declarations attached (in alphabetical order by last name) as Tabs 1-66 to the Appendix to Defendant's Response in Opposition to Plaintiff's Motion for Conditional Certification of FLSA Collective Action (Dkt. 35) are cited as "[last name], ¶ ___."

[2] Plaintiff's declarations attached as Exhibits B-I to Plaintiff's Motion for Conditional Certification (Dkt. 27) are cited as "[last name] (Dkt. ___), ¶ ___."

2

> loans, etc. ... The Tampa call center contained approximately three to four hundred collectors at one time.

Hart (Dkt. 27-2), ¶¶ 8, 21.³ Plaintiff worked in student loan collections where he "handled a high volume of inbound and outbound telephone calls, and was responsible for attempting to collect debt on past due student loan accounts." Hart (Dkt. 27-2), ¶ 9.

Plaintiff claims that he was required to arrive at work up to 15 minutes prior to his shift to ensure that his computer was on, multiple programs were loaded, and that he had read relevant emails and memorandum before taking his first telephone case at the beginning of his shift. Hart (Dkt. 27-2), ¶¶ 11-14.⁴ In addition, Plaintiff claims that "during crunch time, ... [he] was requested to continue working during [his] lunch break" and that he was required to perform end of night "sweeps" during which he was required to stay 30 minutes after the end of his shift. Hart (Dkt. 27-2), ¶¶ 15-16.⁵ As a result, Plaintiff contends that he worked an average of three to four hours per week without compensation. Hart (Dkt. 27-2), ¶ 17.

Plaintiff commenced this action on behalf of himself and similarly situated employees seeking "payment of all of the time spent opening and closing multiple computer software applications at the beginning and end of their work shifts that resulted in the Plaintiff, and those similarly situated, working overtime hours but not being compensated at a rate of no less than time and one half their regular hourly rate." Amended Complaint (Dkt. 19), ¶ 32. Other than the time

---

³ JPMorgan introduced evidence that there are 450 student lending and automotive finance collectors in Tampa who report to 42 different supervisors who, in turn, report to 14 different managers. Young, ¶ 3.

⁴ Despite allegations in the Amended Complaint to the contrary, Plaintiff's declaration makes no reference to time he was required to spend after his shift ended in order to shutdown his computer or close software applications.

⁵ In contrast, the Amended Complaint focuses solely on whether "Plaintiff and all collectors were not paid for the time they spent opening and closing multiple software applications at the beginning and end of their work shifts." Amended Complaint (Dkt. 19), ¶¶ 30-32.

spent opening and closing multiple computer software applications, the Amended Complaint cites to no other examples of unpaid time and contains no reference to any other allegedly unlawful employment practice by JPMorgan.

### Plaintiff's Evidence in Support of Conditional Certification

Plaintiff has filed a Notice of Consent to Join by Helga C. Brenes (Dkt. 4)[6] together with his own declaration and the declarations of seven other purportedly similarly situated former employees indicating that they would join the lawsuit if it is certified as a collective action.[7] As an initial matter, while the Amended Complaint focuses solely on whether "Plaintiff and all collectors were not paid for the time they spent opening and closing multiple software applications at the beginning and end of their work shifts," Amended Complaint (Dkt. 19), ¶¶ 30-32, the declarations assert that employees worked "off the clock" for reasons wholly unrelated to the opening and closing of software applications.[8]

Even without regard to the inconsistencies between the allegations in the Amended Complaint and the conduct complained of in the declarations, it appears that at least four of the seven declarants are not viable opt-in plaintiffs. For example, two of the declarants would not be eligible

---

[6] Ms. Brenes did not file a separate declaration in support of conditional certification. Plaintiff also filed a Notice of Consent to Join by Thomas R. Gray (Dkt. 28), but Mr. Gray subsequently withdrew his consent (Dkt. 41) apparently due to a settlement entered into between him and JPMorgan in a separate proceeding. *See Crittenden, et al. v. JPMorgan Chase & Co.*, Case No. 8:12-cv-631-MSS-EAJ (M.D. Fla.).

[7] The declarations are attached as exhibits to Plaintiff's Motion for Conditional Certification (Dkt. 27) and summarized in Exhibit A attached to this Order.

[8] At a minimum, Plaintiff's attempt to broaden the scope of this action through new allegations of misconduct raised for the first time in the declarations filed in support of conditional certification is troubling as "[i]t is patently unfair to expect a defendant to respond to a theory of liability that shifts with each response." *Adair v. Wisconsin Bell, Inc.*, No. 08-C-280, 2008 WL 4224360, at *5 (E.D. Wis. Sept. 11, 2008) (recognizing that "Plaintiffs' initial failure to accurately set for the Company's timekeeping and payment procedures, even though inadvertent, warrants concern over their other allegations").

to opt in to this lawsuit because their claims are either time barred or subject to mandatory arbitration. *See* Molina (Dkt. 27-5), ¶ 3; Denis-Roman, ¶¶ 5-8. In addition, two declarants have claims falling outside the presumed two-year statute of limitations (*see* Mendoza (Dkt. 27-7), ¶ 3; Butler (Dkt. 27-4, ¶ 3) and, therefore, would be required to demonstrate JPMorgan willfully violated the FLSA. *See* 29 U.S.C. § 255.

### Standard

An FLSA action may be maintained "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Certification of collective actions in FLSA cases is based on a theory of judicial economy, by which "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). The decision to conditionally certify a collective FLSA action lies within the sound discretion of the district court. *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001).

District courts in the Eleventh Circuit generally utilize a two-tiered approach in making collective action certification determinations under the FLSA:

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision – usually based only on the pleadings and any affidavits which have been submitted – whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given

> notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question.

*Hipp*, 252 F.3d at 1218 (quoting *Mooney v. Armco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995)).[9]

At the notice stage, a court must determine whether: (1) there are other employees who desire to opt in to the action; and (2) the employees who desire to opt in are "similarly situated." *Dybach v. State of Fla. Dep't of Corrs.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991). Although this determination is made using a fairly lenient standard, the plaintiff must offer "detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996) (internal quotation marks and citations omitted). Ultimately, the district court must satisfy itself that there are other employees who are similarly situated and who desire to opt in. *Dybach*, 942 F.2d at 1567-68.

## Discussion

JPMorgan argues that conditional certification should be denied because, *inter alia*, (1) Plaintiff has failed to demonstrate that others desire to – and actually can – join this action, and (2) Plaintiff has failed to demonstrate that he is similarly situated to the putative class. The Court agrees.

---

[9] Within the Eleventh Circuit, district courts are encouraged, but not required to adopt this two-tiered approach to certification of classes in an FLSA case. *Id.* at 1219.

### *Evidence of Others Desiring to Join Lawsuit*

"[P]laintiffs have the burden of demonstrating a reasonable basis for crediting their assertions that aggrieved individuals exist[] in the broad class that they proposed." *Haynes v. Singer Co., Inc.*, 696 F.2d 884, 887 (11th Cir. 1983). Evidence of similarly situated employees who desire to opt in may be based on affidavits of other employees, consents to join the lawsuit filed by other employees, or expert evidence on the existence of other similarly situated employees. *Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp. 2d. 1272, 1277 (M.D. Ala. 2004).

A plaintiff's or counsel's belief in the existence of other employees who desire to opt in and "unsupported expectations that additional plaintiffs will subsequently come forward are insufficient to justify" certification of a collective action and notice to a potential class. *Mackenzie v. Kindred Hosps. East, L.L.C.*, 276 F. Supp. 2d 1211, 1220 (M.D. Fla. 2003) (citing *Haynes*, 696 F.2d at 887); *Horne v. United Servs. Auto. Ass'n*, 279 F. Supp. 2d 1231, 1236-37 (M.D. Ala. 2003). Notice to a potential class is not appropriate to determine *whether* there are others who desire to join the lawsuit. *Mackenzie*, 276 F. Supp. 2d at 1220 (citing *Dybach*, 942 F.2d at 1567-68). Rather, a showing that others desire to opt in is required before certification and notice will be authorized. *Id.*

Although Plaintiff's burden at the notice stage is not heavy, it is not "invisible." *Brooks v. Rainaldi Plumbing Inc.*, No. 6:06-cv-631, 2006 WL 3544737, at *2 (M.D. Fla. Dec. 8, 2006). Accordingly, "federal courts across the Middle and Southern Districts of Florida have routinely denied requests for conditional certification where plaintiffs attempt to certify a broad class based only on the conclusory allegations of a few employees." *Simpkins v. Pulte Home Corp.*, No. 6:08-cv-130-Orl-19DAB, 2008 WL 3927275, at * 2 (M.D. Fla. Aug. 21, 2008) (collecting cases).

Plaintiff has identified, at most, eleven current or former employees that either have joined, or may be interested in joining, this lawsuit.[10] In reality, Plaintiff has submitted the declarations of just three viable opt-in plaintiffs representing only three of seventeen nationwide call centers.[11] On the other hand, JPMorgan has submitted the detailed declarations from six company representatives and nearly 60 putative class members attesting that they are not interested in joining this lawsuit and/or are unaware of any others who desire to this lawsuit. *See* Appendix to Defendant's Response in Opposition to Plaintiff's Motion for Conditional Certification of FLSA Collective Action (Dkt. 35), Tabs 1-66. These declarations include employees from nine of JPMorgan's call centers, including eleven declarations from employees at the Tampa call center. *See id.*

Based on the minimal number of potential opt-in plaintiffs identified by Plaintiff compared to the total number of individuals employed by JPMorgan as debt collectors,[12] together with the overwhelming number of declarations to the contrary submitted by JPMorgan,[13] the Court finds that

---

[10] One individual has filed a consent to join in this lawsuit, Plaintiff's declaration identifies three employees he "expects" to join this lawsuit, and Plaintiff has submitted the declarations of seven individuals that have indicated they would join the lawsuit if it is certified as a collective action. At best, these individuals represent only six of the seventeen nationwide call centers operated by JPMorgan.

[11] As discussed, two of the seven declarations were filed by potential opt-in plaintiffs whose claims are either barred by the maximum three-year statute of limitations or subject to mandatory arbitration. In addition, two declarants would be required to demonstrate JPMorgan willfully violated the FLSA in order to recover because their claims fall outside the presumed two-year statute of limitations. *See* 29 U.S.C. § 255.

[12] *See Kessler v. Life Savers Serv. Providers, LLC*, Case No. 6:06-cv-1442-Orl-19JGG, 2007 WL 1531395, at *3 (M.D. Fla. May 25, 2007) (finding potential class of ten employees not large enough for class treatment); *Harrison v. McDonald's Corp.*, 411 F.Supp.2d 862, 870-71 (S.D. Ohio 2005) (averments from two (2) employees who claimed FLSA violations, out of a potential class of 300, were insufficient to allow for conditional certification); *Smith v. Tradesmen Int'l, Inc.*, 289 F.Supp.2d 1369, 1372 (S.D. Fla. 2003) (three identical affidavits by employees with different job descriptions, titles, and job responsibilities who worked in different geographic locations were insufficient).

[13] *See Grayson*, 79 F.3d at 1097 (holding that plaintiff must offer "detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary") (internal quotations and citations omitted); *see also Wombles v. Title Max of Ala., Inc.*, No. Civ. A. 303CV1158CWO, 2005 WL 3312670, at *3 (M.D. Ala. Dec. 7, 2005) (plaintiffs' affidavits and two consents to join were not sufficient to engage defendant's forty six affidavits to the contrary).

Plaintiff has not demonstrated a reasonable basis for crediting his assertions that other aggrieved employees exist who wish to opt-in to this action.[14] That is, Plaintiff has failed to make an affirmative showing that other employees from across the nation wish to join this lawsuit so as to warrant conditional certification.

### *Similarly Situated Employees*

Even if Plaintiff could demonstrate that there exists nationwide interest among employees in joining this lawsuit, Plaintiff must still establish that he his similarly situated with the putative class and that the putative class itself is comprised of similarly situated employees. *See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1258 (11th Cir. 2008). "The key consideration is that to be 'similarly situated,' there must be 'substantial allegations that potential members were together the victims of a single decision, policy, or plan.'" *Richardson v. Wells Fargo Bank, N.A.*, Civil Case No. 4:11-cv-00738, 2012 WL 334038, at *2 (S.D. Tex. Feb. 2, 2021) (quoting *McKnight v. D. Houston, Inc.*, 756 F.Supp.2d 794, 801 (S.D. Tex. 2010)).

In determining whether employees are similarly situated, a court must consider whether the employees are similar with respect to their job requirements and pay provisions and the commonality of their claims. *Dybach*, 942 F.2d at 1567-68; *Horne*, 279 F.Supp.2d at 1234. Plaintiff need only demonstrate that his position is similar, not identical, to the positions of the potential class plaintiffs. *Grayson*, 79 F.3d at 1096. Although the similarly situated standard is not a stringent one, a showing of similarity requires more than unsupported and generalized allegations. *Hipp*, 252 F.3d at 1219 (citing *Grayson*, 79 F.3d at 1097); *Haynes*, 696 F.2d at 887.

---

[14] Plaintiff's unsupported beliefs and expectations that others may desire to opt in are insufficient to justify certification of a collective action and notice to a potential class. *See Mackenzie*, 276 F.Supp.2d at 1220 (certification and notice are not appropriate to determine whether others desire to opt in).

Plaintiff has failed to demonstrate that there are other similarly situated employees who desire to opt in to this action.[15] Moreover, Plaintiff and the declarants each complain of widely divergent "off-the-clock" violations – even with respect to employees at the Tampa call center.[16] The existent of divergent theories of liability is not surprising given that the putative class members were subject to, *inter alia*, different supervisors, timekeeping practices, and job obligations and responsibilities.[17] As a result, plaintiff-specific inquiries would be required as to numerous issues including, *inter alia*, whether plaintiffs actually worked "off the clock," whether plaintiffs modified their time records to reflect the actual time worked, whether plaintiffs' supervisors were aware of any "off-the-clock"

---

[15] Plaintiff's statements in his declaration that he has personal knowledge that debt collectors in other divisions at the Tampa call center had "primarily the same" job functions, relied on the same programs, and used the same time keeping system are unpersuasive and fail to take into account the varying complaints of Plaintiff and other members of the putative class. Moreover, Plaintiff does not purport to have knowledge regarding the job functions of employees at other call centers and any contention that such employees are similarly situated is rebutted by the declarations submitted by JPMorgan.

[16] The declarations submitted by other former employees at the Tampa call center reflect different complaints (*e.g.*, working after shift to close computer programs vs. working after shift to conduct office "sweeps" vs. working after shift to complete telephone calls), variations in time required to perform "of-the-clock" tasks, and varying work schedules. Even with respect to the sole allegation in the Amended Complaint relating to nonpayment for time spent opening and closing computer software, the evidence of record suggests Plaintiff and potential class members are not similarly situated. In this regard, Plaintiff alleges that he and similarly situated employees were not paid for this time because their pay was calculated based on the time that they were logged into their telephone, not the actual time that they were working. *See* Hart (Dkt. 27-2), ¶¶ 13-14. This contention is belied by at least two of the declarations submitted by Plaintiff in support of conditional certification. *See* Malone (Dkt. 27-9), ¶ 7 ("My work time was recorded when I logged in and out of my telephone; however, for payroll purposes, I believe I was paid an automatic 4 hours a day irrespective of when I logged in and out of my telephone."); Molina (Dkt. 27-5), ¶ 7 ("For payroll purposes, my work time was recorded when I logged into my telephone, and when I manually entered my time into a computer system."). Moreover, the declarations submitted by JPMorgan indicate that employees' self-reported time sheets – not telephone records – were the official time records for payroll purposes (*see, e.g.*, Dkt. 35, Tab 8, ¶ 7, Tab 63, ¶¶ 9, 11).

[17] The declarations submitted by JPMorgan provide ample examples of differences between members of the putative class, including duties performed, the sequence in which employees activate their phones and log into their computers, and scheduling and time keeping practices. *See, e.g.*, Defendant's Response in Opposition to Plaintiff's Motion for Conditional Certification of FLSA Collective Action (Dkt. 34), pp. 5-10.

work,[18] whether plaintiffs agreed to mandatory arbitration, and whether any "off-the-clock" work fell within the *de minimis* exception to the FLSA. These individualized inquiries make the certification of a collective action in this proceeding unwarranted. *See West v. Verizon Communications, Inc.*, No. 8:08-cv-1325-T-33MAP, 2009 WL 2957963, at *7 (M.D. Fla. Sept. 10, 2009) (denying class certification in an FLSA case: "The need for individualized inquiries would contravene the basic theory of judicial economy upon which the certification of collective actions is based."); *Holt v. Rite Aid Corp.*, 333 F.Supp.2d 1265, 1274 (M.D. Ala. 2004) (denying class certification in an FLSA case: "the court is not satisfied that conditionally certifying a nationwide collective action, or even a regional collective action, will partake of the economy of scale envisioned by the FLSA collective action procedure").[19]

## Conclusion

Based on the forgoing, the Court will exercise its discretion to deny certification of a collective action. *See Hipp*, 252 F.3d at 1217; *see also Basco v. Wal-Mart Stores, Inc.*, No. Civ. A. 00-3184, 2004 WL 1497709, at 5 (E.D. La. July 2, 2004) ("To create a collective action class,

---

[18] JPMorgan submitted evidence that it is company policy to prohibit "off-the-clock" work and to pay employees for overtime even absent preapproval. *See, e.g.*, Defendant's Response in Opposition to Plaintiff's Motion for Conditional Certification of FLSA Collective Action (Dkt. 34), pp. 3-4. Any deviation from that policy will therefore require case-by-case adjudication focusing on the actions of individual managers and supervisors. *See Andersen v. Wells Fargo Fin., Inc.*, No. 4:11-cv-00085, 2012 U.S. Dist. LEXIS 23175, at *20 (S.D. Iowa Feb. 6, 2012) ("In the absence of any evidence tending to show that Defendants routinely breached FLSA's pay provisions, these deviations are case-specific and subject to variables, making them unfit for a collective action."); *see also Thompson v. Speedway SuperAmerica LLC*, No. 08-CV-1107(PJS/RLE), 2009 WL 130069, at *3 (D. Minn. Jan. 20, 2009) ("although plaintiffs have offered evidence that a tiny fraction of the 8,000 members of the putative class may not have received some of the compensation that they were due under the FLSA and under [defendant's] own published policies, plaintiffs have not established a colorable basis for their claim that [defendant] implemented a corporate decision to ignore its published policies").

[19] *See also West v. Border Foods, Inc.*, Civil No. 05-2525 (DWF/RLE), 2006 WL 1892527, at *9 (D. Minn. July 10, 2006) ("Considering the individualized nature of the alleged violations, along with the absence of evidence to support the Plaintiffs' conclusory assertion of widespread violations, we find that the Plaintiffs have failed to demonstrate even a colorable basis that they were the victim of some common policy or plan, or that a manageable class exists, which would render a collective action appropriate.").

including the cost associated with that when a Court is convinced that there is insufficient support for the same prior to certification would be an exercise in futility and wasted resources for all parties involved."). Accordingly, it is

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Conditional Certification of FLSA Collective Action and Permitting Court-Supervised Notice to Potential Opt-In Plaintiffs (Dkt. 27) is **DENIED**.

**DONE AND ORDERED** this __11th__ day of December, 2012.

*/s/ Whittemore*
JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record